UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| RACKWISE, INC., a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>GUY ARCHBOLD, an individual,<br><br>Defendant. | CIV. NO. 2:17-797 WBS CKD<br><br>MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY PROHIBITORY AND MANDATORY INJUNCTION |

----oo0oo----

Plaintiff Rackwise, Inc. brought this action against defendant Guy A. Archbold for conversion, fraud, breach of the duty of good faith and fair dealing, tortious interference with prospective economic advantage, and declaratory relief arising from defendant's actions before and after his purported termination as plaintiff's President, CEO, and Chairman of the Board of Directors. Before the court is plaintiff's Motion for preliminary prohibitory and mandatory injunctive relief. (Docket No. 6.)

1

I. <u>Factual and Procedural History</u>

In 2011, defendant became President, CEO, and Chairman of the Board of Rackwise.[1] (First Am. Compl. ("FAC") ¶ 9 (Docket No. 4).) On May 7, 2014, Rackwise Funding II, LLC ("RFII") allegedly entered into a Subscription Agreement that entitled it to appoint two members to Rackwise's board of directors and created warrants that permitted RFII to purchase shares of Rackwise upon notice and payment. (<u>Id.</u> ¶¶ 10-11; <u>id.</u>, Ex. B ("Subscription Agreement") (Docket No. 7-3).) Defendant, as Rackwise CEO, also allegedly granted another company, Triple R-F, LLC, warrants to purchase shares of Rackwise stock. (Richert Suppl. Decl. ¶¶ 4-5, Exs. 2-3 (Docket Nos. 10-1, 10-3 to -4).)

On February 2, 2017, plaintiff alleges its board of directors consisted of Archbold, John Kyees, and Michael Feinberg. (Imeson Decl. ¶ 9 (Docket No. 6-3).) That day, Patrick Imeson, as RFII's Managing Member, allegedly appointed himself and Bart Richert to Rackwise's Board of Directors pursuant to RFII's Subscription Agreement. (FAC ¶ 13; Imeson Decl. ¶¶ 10-12.) On February 3, 2017, Feinberg, Kyees, Imeson, and Richert allegedly held a special board meeting and terminated Archbold as President, CEO, and chairman of the board. (FAC ¶ 14.) Archbold disputed the validity of this action.

On March 22, 2017, RFII and Triple R-F exercised their warrants to purchase shares of plaintiff's stock. (Imeson Decl. ¶¶ 14, 16; Richert Supp. Decl. ¶¶ 9-10.) The next day,

---

[1] Rackwise previously merged with Visual Network Design, Inc. ("VND"), which caused VND's bylaws to become Rackwise's bylaws. (<u>See</u> FAC ¶ 7; <u>id.</u>, Ex. A ("Rackwise Bylaws") (Docket No. 7-2).)

2

shareholders possessing over 79% of Rackwise's outstanding stock voted by written consent to terminate Archbold as President, CEO, and chairman of the board.[2] (Imeson Decl. ¶¶ 20-23; FAC Ex. E ("Written Consent of Shareholders") (Docket No. 7-6); Richert Suppl. Decl. ¶¶ 13-15.)

After his alleged termination, defendant continued to act as CEO, President, and chairman of Rackwise. He allegedly held himself out as the CEO to Rackwise constituents and employees, held a meeting with other former Rackwise board members purporting to act on Rackwise's behalf, filed documents with the SEC on Rackwise's behalf,[3] communicated with potential Rackwise investors using confidential and proprietary Rackwise information, and terminated a contract with a current client. (FAC ¶¶ 28-36; Imeson Decl. ¶¶ 26-28, 34-40, 44.)

Plaintiff initiated this action against defendant, alleging conversion, fraud, breach of the duty of good faith and fair dealing, and tortious interference with prospective economic advantage. Plaintiff now moves for a preliminary prohibitory injunction preventing defendant from (1) accessing or logging into Rackwise's account in the SEC's online EDGAR filing system; (2) representing himself to anyone as being an officer, director,

---

[2] Imeson and Richert signed the written shareholder consent. Imeson signed as the managing member of shareholders RFII, Black Diamond Financial Group, LLC, Rackwise Funding, LLC, and Black Diamond Holdings, LLC. (Imeson Decl. ¶¶ 2-3, 21.) Richert signed as the managing member of shareholder Triple R-F. (Id. ¶ 3; Richert Decl. ¶ 1.)

[3] Defendant also allegedly accessed and filed documents using Rackwise's online S.E.C. account after the February board of directors action, but before the written shareholder action. (See Imeson Decl. ¶ 42.)

3

or employee of, or otherwise affiliated with, Rackwise; and (3) acting, attempting to act, or purporting to act on behalf of Rackwise. Plaintiff also moves for a mandatory injunction requiring defendant to submit a declaration attesting to (1) the identities of all Rackwise customers he has contacted since March 22, 2017, purportedly on behalf of Rackwise with true and correct copies of all communications with those customers and (2) the identifies of all potential investors that Archbold has solicited or attempted to solicit investments or financial on behalf of Rackwise, including copies of all communications.

II. Discussion

State law "controls the issue of whether a plaintiff is entitled to seek injunctive relief on the claim." Anselmo v. Mull, Civ. No. 2:12-1422 WBS EFB, 2012 WL 5304799, at *6 (E.D. Cal. Oct. 25, 2012). The parties do not dispute that state law permits plaintiff to seek a preliminary injunction. However, "federal, not state, standards govern issuance of a preliminary injunction when a federal court is sitting in diversity or exercising supplemental jurisdiction over state law claims." Id. at *5; see, e.g., Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 541 (6th Cir. 2007) ("[W]e apply our own procedural jurisprudence regarding the factors to consider in granting a preliminary injunction . . . ."); Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1361 (10th Cir. 1990) ("[T]he doctrine of Erie . . . does not apply to preliminary injunction standards . . . ."); Kane v. Chobani, Inc., Case No.: 12-CV-2425-LHK, 2013 WL 3776172, at *3 (N.D. Cal. July 15, 2013) ("[A]pplying federal standards to determine whether a preliminary

4

injunction should be issued will not alter the final outcome of the litigation.").

In order to obtain a preliminary injunction, the moving party must establish (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20-21 (2008); Humane Soc. of the U.S. v. Gutierrez, 558 F.3d 896, 896 (9th Cir. 2009). Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam).

To determine likelihood of success on the merits, the court must first determine whether Rackwise will be likely to establish that plaintiff's shareholders validly removed defendant from his positions as CEO, President, and chairman of the board.

A federal court sitting in diversity applies the choice of law rules of the forum state. Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012). Under California's internal affairs doctrine, "a court must look to the law of the state of incorporation with respect to matters involving the regulation of [a corporation's] 'internal affairs.'" Patriot Scientific Corp. v. Korodi, 504 F. Supp. 2d 952, 956 (S.D. Cal. 2007) (citing State Farm Mut. Auto. Ins. Co. v. Superior Court, 114 Cal. App. 4th 434, 442 (2d Dist. 2003)). Because plaintiff Rackwise is incorporated in Nevada, Nevada law governs its internal affairs.

Plaintiff argues that shareholders possessing over 75%

of Rackwise's outstanding stock removed defendant as CEO, President, and chairman of the board by written consent.[4] The Rackwise bylaws permit the removal of a director by "at least seventy-five percent (75%) of the outstanding shares of stock" by written consent. (Rackwise Bylaws § 3.3.)

On March 22, 2017, RFII, pursuant to an existing Subscription Agreement, allegedly exercised its warrants and purchased 1,448,400 shares of Rackwise stock. (Imeson Decl. ¶¶ 13-14; Pls.' Mot., Ex. 2.) On the same day, Triple R-F exercised its warrants and purchased 9,638,740 shares of Rackwise stock.[5] (Richert Decl. ¶¶ 3-4; Richert Supp. Decl. ¶¶ 9-11.) On March 23, 2017, Imeson and Richert, as the managing members of the entities allegedly holding 79.8% of Rackwise's outstanding common stock, signed a written shareholder action terminating defendant from the Board of Directors and as CEO and President of Rackwise. (FAC, Ex. F; Imeson Decl. ¶¶ 20-22; Richert Suppl. Decl. ¶¶ 13-

---

[4] Plaintiff also argues that defendant was removed following a special meeting of the Board of Directors on February 2, 2017. (FAC ¶ 14.) The Rackwise bylaws allegedly permit the removal of a director by a majority vote of the board; however, "[w]ritten notice of the time and place of special meetings shall be delivered personally to each director" at least 48 hours in advance. (Rackwise Bylaws § 4.4.) It is unclear at this stage whether all directors received adequate notice of the February 2 meeting, and defendant avers that he, as a director on February 2, did not receive any such notice. (See Archbold Decl. ¶¶ 7, 9.)

[5] In his opposition, defendant argues that the exercise of the warrants was not taken "with proper corporate procedure," but fails to explain how this action was impermissible either under the bylaws or Nevada law. At oral argument, defendant raised for the first time that the warrants were not validly exercised because he was the only officer, the warrants had to be delivered to an officer of the corporation, and he never received notice of the warrants being exercised. Defendant has not provided documentary evidence supporting this proposition.

15.) This action appears to have been taken in compliance with section 3.3 of Rackwise's bylaws and Nevada Revised Statute § 78.335. Therefore, for purposes of this Motion, plaintiffs has a likelihood of success on its allegation that defendant was properly terminated from his positions at Rackwise.

Plaintiff must next be likely to succeed on the merits of its claims. Where a party asserts multiple claims, plaintiff only needs to show he is likely to succeed on the merits of at least one claim. See Fin. Express LLC v. Nowcom Corp., 564 F. Supp. 2d 1160, 1168 (C.D. Cal. 2008). Under California law, there are five elements of the tort of intentional interference with prospective economic advantage:

> (1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party.

Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 944 (2008).

First, plaintiff had an economic relationship with third parties--its customers, including Unisys, and investors. Second, defendant, as the purported former CEO, President, and chairman of Rackwise, was allegedly aware of these relationships, as shown by his alleged communication with Unisys and investors. (Imeson Decl. ¶¶ 37-38, 40.) Third, defendant allegedly intentionally acted with the purpose of interfering with these relationships by canceling Unisys's contract with plaintiff,

7

communicating with current and former investors, seeking additional investments for Rackwise, and filing documents with the SEC that created a question as to Rackwise's leadership. (Id. ¶¶ 31-40, 44.) Lastly, defendant may have actually disrupted and caused harm to plaintiff by submitting forms with the SEC that confuses customers, investors, the public, and the SEC as to the proper representatives of the corporation; interfering with customer contracts and investor relations; and disseminating confidential and proprietary information. (Id. ¶¶ 32-34, 37-39, 44, 46-47.)

For purposes of plaintiff's motion for a preliminary injunction, plaintiff has sufficiently shown that it is likely to succeed on the merits of its claim.

Plaintiff must next "establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." All. for the Wild Rockies v. Cottrell, 622 F.3d 1127, 1131 (9th Cir. 2011) (emphasis in original) (citing Winter, 555 U.S. at 22). "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." Winter, 555 U.S. at 21. "[I]ntangible injuries that are incapable of measurement, like reputation or goodwill, may constitute irreparable harm." Design Furnishings, Inc. v. Zen Path, LLC, Civ. No. 2:10-2765 WBS GGH, 2010 WL 5418893, at *6 (E.D. Cal. Dec. 23, 2010).

Plaintiff may be irreparably harmed if defendant is not enjoined from attempting to access and file documents on Rackwise's behalf using its online SEC account, as he allegedly has done in the past, because false or inconsistent filings would

harm the reputation and goodwill of plaintiff with investors, customers, and the SEC. As recently as April 2017, Rackwise's account has allegedly had inconsistent Form 8-K filings resulting from this dispute, and there is no indication that this would change in the future absent injunctive relief. Plaintiff may also suffer loss of reputation and goodwill from customers and investors if defendant is not enjoined from holding himself out as Rackwise's CEO, President, and chairman to customers and investors.

Further, defendant's representations that he is the CEO, President, and chairman of Rackwise's board will likely result in irreparable harm because defendant would be able to enter plaintiff into "transactions which would be difficult to unscramble." See Calumet Indus., Inc. v. MacClure, 464 F. Supp. 19, 28 (N.D. Ill. 1978). Defendant is purportedly attempting to line up potential investments for Rackwise and cancel contracts with current customers. (See Imeson Decl. ¶¶ 37-40.) Finally, plaintiff argues that defendant has disseminated confidential and proprietary information in a PowerPoint presentation, suggesting that defendant may continue to disseminate this information absent injunctive relief. (See id. ¶ 34.) Plaintiff has met the irreparable harm requirement.

The last two prongs also weigh in favor of issuing a preliminary injunction. Defendant argues the harm he will incur if he is improperly enjoined is that he will be prevented from continuing to raise money and align future customers for Rackwise. While this may cause some harm to defendant, that would only be as a result of his role as the purported President,

CEO, and chairman of Rackwise's board. It is unclear whether defendant is a Rackwise shareholder and whether he has any interest in the company beyond the fact he is the "long-time CEO" of Rackwise. On the other hand, plaintiff may suffer great harm if defendant is not enjoined from holding himself out as CEO and President and acting on behalf of Rackwise, as discussed above.

The public has an interest in avoiding "confusion in the marketplace during the interval" and ensuring that only proper individuals hold themselves out as a corporation's representatives. Cf. Abercrombie & Fitch v. Fashion Shops of Ky., Inc., 363 F. Supp. 2d 952, 968 (S.D. Ohio 2005) (finding it was in the public interest to prevent the dissemination of items bearing plaintiff's trademark because it avoids confusion in the marketplace). The public therefore has an interest in the injunction because the injunction prevents confusion over the leadership of Rackwise pending final resolution of this action.

Plaintiff has met the four Winter prongs. Accordingly, the court will grant plaintiff's Motion for preliminary prohibitory injunctive relief.

In addition to a prohibitory injunction, plaintiff seeks a mandatory injunction requiring defendant to disclose the identities of all customers and potential investors that defendant has contacted since March 22, 2017. "Such 'mandatory preliminary relief' is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." Dahl v. HEM Pharm. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (quoting Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1980)). Plaintiff has not discussed this heightened

10

standard, let alone how it has met this standard.  Accordingly, the court must deny plaintiff's request for a mandatory injunction.

Federal Rule of Civil Procedure 65(c) provides that the court may require the posting of a security bond "[i]n an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Plaintiff has not presented evidence of any meaningful inconvenience to it by the imposition of a bond.  The court considers a bond in the sum of $10,000 to be appropriate under the circumstances.  See Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999) (holding district court has discretion "to determine the amount and appropriateness" of a security bond).

At oral argument, defense counsel raised for the first time that any disputes regarding the Subscription Agreements are subject to binding, mandatory arbitration.  The court declines to decide this issue without briefing from both parties.  The court will set briefing and argument for any motion on this issue, but the parties may stipulate to an expedited briefing schedule.

IT IS THEREFORE ORDERED that plaintiff's Motion for preliminary injunction (Docket No. 6) be, and the same hereby is, GRANTED IN PART and DENIED IN PART.  Upon the posting of the $10,000 bond, pending hearing upon any motion for a permanent injunction, defendant Guy Archbold, his agents, and any party acting in concert with him or his agents are enjoined from:

(1) accessing or logging into, or attempting to access or log into, Rackwise, Inc.'s account in the U.S. SEC's online

```
 1  EDGAR filing system;
 2          (2) representing himself to anyone as being an officer,
 3  director, or employee of, or otherwise affiliated with Rackwise,
 4  Inc.; and
 5          (3) acting, attempting to act, or purporting to act on
 6  behalf of Rackwise, Inc.
 7          Plaintiff's remaining requests for mandatory injunctive
 8  relief are DENIED.
 9          IT IS FURTHER ORDERED that plaintiff shall file any
10  motion to compel arbitration by June 26, 2017.  Any opposition to
11  such motion shall be filed by July 10, 2017.  Any reply to such
12  opposition shall be filed by July 17, 2017.  Any hearing on such
13  motion shall take place on July 24, 2017, at 1:30 p.m.
14  Dated:  June 13, 2017
15                               _____
                                 WILLIAM B. SHUBB
16                               UNITED STATES DISTRICT JUDGE
17
18
19
20
21
22
23
24
25
26
27
28
                                    12
```