UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACKWISE, INC., a Nevada corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GUY ARCHBOLD, an individual, and DOES 1 to 25, inclusive,<br><br>　　　　Defendants. | No. 17-cv-797 WBS CKD<br><br>MEMORANDUM OF DECISION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW |

　　　　Plaintiff Rackwise, Inc. brought this action against defendant Guy A. Archbold for conversion, fraud, breach of the duty of good faith and fair dealing, tortious interference with prospective economic advantage, and declaratory and injunctive relief arising from defendant's actions before and after his purported termination as plaintiff's President, CEO, and Chair of the Rackwise Board of Directors.  After the initial Pretrial Conference, the court determined, with the agreement of the parties, that plaintiff's claims for injunctive and declaratory relief would be tried before the court separately from

1

plaintiff's common law claims.

After conducting a three-day bench trial, the court finds in favor of plaintiff in part as to plaintiff's requests for declaratory and injunctive relief. This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). The court expresses no opinion as to plaintiff's claims for conversion, fraud, breach of the duty of good faith and loyalty, and tortious interference with prospective economic advantage, which will be tried before a jury on a later date.

I. Factual and Procedural History

In 2011, defendant became President, CEO, and Chair of the Board of Directors of Rackwise. The parties dispute whether plaintiff's employment contract (Ex. 11) was valid but do not dispute that defendant served as President, CEO, and Chair from 2011 until his purported termination in 2017. Defendant also claims that he was appointed as Secretary of Rackwise but offers nothing other than his testimony in support of that contention.

On May 7, 2014, Rackwise Funding II, LLC ("RFII") entered into a Subscription Agreement with Rackwise that entitled it to appoint two members to Rackwise's Board and that created warrants permitting RFII to purchase shares of Rackwise upon notice and payment. (Exs. 4, 5, 20.)[1] Defendant, as Rackwise CEO, also granted another company, Triple R-F, LLC ("Triple R-F"), warrants to purchase shares of Rackwise stock. (Ex. 6.)

Over the years after the incorporation of Rackwise in

---

[1] All exhibit numbers refer to the trial exhibit number.

2

2011, Rackwise achieved some business successes, including an agreement with Unisys Corporation which defendant claimed had potential to lead to millions or even billions of dollars in revenue for Rackwise. It is undisputed, though, that Rackwise continued to lose money every year. Eventually the relationship between Unisys and defendant Archbold soured, and Unisys stopped responding to contacts from Rackwise in 2016. Further, (1) the Internal Revenue Service began taking steps to foreclose on Rackwise, (2) Rackwise began to default on its leases and was in danger of eviction and termination of business services, and (3) Rackwise defaulted on a factoring agreement with Richert Funding, LLC ("Richert Funding") (Ex. 14), on which Richert Funding could have foreclosed at any time.

In late January 2017, plaintiff claims its Board of Directors consisted of Archbold, John Kyees, and Michael Feinberg. In contrast, defendant claims the Board consisted of himself, Kyees, Feinberg, and Sherman Henderson, notwithstanding a July 2016 email from defendant in which Archbold discussed the possible removal of Henderson from the Rackwise Board and explained "He's out, period," (Ex. 12), and testimony that Henderson was not involved with Rackwise after July 2016.

On February 2, 2017, Patrick Imeson, as RFII's managing member, purportedly appointed himself and Bart Richert to the Rackwise Board pursuant to RFII's subscription agreement. Imeson, Richert, and Feinberg then held a special telephonic meeting of the Rackwise Board, at which they discussed defendant's "recent and unauthorized communications with Unisys" and "the potential for litigation from Unisys as a result of such

communications." (Ex. 15.) Imeson, Richert, and Feinberg then terminated defendant for cause as Rackwise President, CEO, and Chair. They also appointed Imeson as Interim Chief Restructuring Officer of Rackwise.[2] While the minutes of the February 2, 2017 meeting list Imeson and Richert as directors, the minutes do not discuss their appointment to the Board. Archbold was not notified of the meeting and did not attend. Kyees was notified of the meeting but was not able to attend.

Fearing that the February 2, 2017 meeting and the actions taken there might be challenged as invalid, Imeson, Richert, Feinberg, and Kyees held another special Board meeting on February 3, 2017. (Ex. 16.) Archbold was not notified of this meeting and did not attend. At this meeting, Imeson stated that RFII had appointed two members to the Rackwise Board under RFII's Subscription Agreement, Imeson and Richert. Kyees and Feinberg ratified Imeson's and Richert's appointments and then Imeson, Richert, Kyees, and Feinberg voted to remove defendant for cause as President, CEO, and Chair of the Rackwise Board, and appoint Imeson as Interim Chief Restructuring Officer.

This newly constituted Board then notified defendant of his termination on February 3, 2017 (Ex. 17), though defendant continued to hold himself out as Rackwise President, CEO and Chair after receiving this notice, by, among other things, making an SEC filing disputing the actions taken at the February 2 and 3

---

[2] Imeson drafted a notice to the Rackwise Board dated January 29, 2017 in which he stated RFII was exercising its right to appoint two Board members to Rackwise (Ex. 18), but it appears that this notice was not presented to Rackwise or any Rackwise employees, officers, or directors until the February 2, 2018 Board meeting.

4

meetings.  (See, e.g., Ex. 22.)  Seeking to address defendant's actions and remove any doubt about the validity of the appointment of Imeson and Richert and the termination of defendant, Imeson and other Rackwise shareholders formed a strategy to obtain over 75% of Rackwise stock so that they could then ratify the actions taken at the February 2 and 3 meetings through a shareholder vote.

Under this strategy, RFII and Triple R-F, through their managers Imeson and Dwight Richert (brother of Bart Richert), exercised their warrants (Exs. 5, 6) to purchase shares of plaintiff's stock on March 22, 2017.  RFII exercised its warrants to purchase 1,448,400 shares of Rackwise stock at an exercise price of $.01 per share, and Triple R-F exercised warrants to purchase 9,638,740 shares of Rackwise common stock at an exercise price of $.01 per share.  (Exs. 25, 26.)  Pursuant to this exercise of warrants, RFII deposited $14,484.00 into a Rackwise bank account with First Bank in Denver, Colorado, and Triple R-F wired $96,387.40 to the same bank account.  This money was later used for Rackwise expenses.

After this exercise of warrants, RFII, Triple R-F, and other entities managed by Imeson or Dwight Richert held 14,319,503 shares out of the 18,158,757 total Rackwise shares, or about 78.9% of Rackwise's outstanding stock.  These entities then voted by written consent to terminate Archbold as President, CEO, and Chair of the Rackwise Board.  (Ex. 27.)  In the written consent, these shareholders also (1) removed Sherman Henderson as a member of the Board, (2) appointed Patrick Imeson and Bart Richert as members of the Board of Directors, effective February

3, 2017; and (3) ratified the actions of the Rackwise Board of Directors meeting on February 3, 2017, including the termination of defendant for cause and the appointment of Patrick Imeson as Rackwise Acting Chief Restructuring Officer.

After the shareholder ratification of defendant's termination in March 2017, defendant continued to act as CEO, President, and Chair of Rackwise. He held himself out as the CEO to Rackwise constituents and employees, held meetings with purported Rackwise Board members acting on Rackwise's behalf, filed documents with the SEC on Rackwise's behalf, communicated and conducted business with Rackwise investors, and terminated Rackwise's contract with Unisys. (See, e.g., Exs. 24, 28-31, 35-50, 52-63.)

Plaintiff initiated this action against defendant in April 2017 and shortly thereafter moved for a preliminary injunction. The court granted plaintiff's motion in part on June 13, 2017 and enjoined defendant, his agents, and anyone acting in concert with him from (1) accessing or logging into, or attempting to access or log into, Rackwise's account in the U.S. SEC's online EDGAR filing system; (2) representing himself to anyone as being an officer, director, or employee of, or otherwise affiliated with Rackwise; and (3) acting, attempting to act, or purporting to act on behalf of Rackwise (Docket No. 13.)[3]

---

[3] The court later modified the injunction to clarify that the injunction did not prevent Archbold or his agents from "making, signing, or filing any pleading or other document, or from giving any oral or written testimony, in connection with any presently pending lawsuit or arbitration proceeding in which the right to control or ownership of Rackwise, Inc. is in issue." (Docket No. 53.)

After multiple attempts by defendant to stay proceedings under various grounds, the case finally proceeded to a bench trial regarding the corporate governance issues on August 21, 2018.

II. Analysis

    A. Just Cause

The court assumes, but does not decide, that defendant had a valid employment contract with plaintiff.[4] Regardless of whether defendant had a valid contract, however, the Board of Directors and the Rackwise shareholders had just cause to terminate defendant as President, CEO, and Chair of the Rackwise Board of Directors. Rackwise continued to lose money every year during defendant's tenure, and the company's poor performance alone would be sufficient just cause to terminate defendant. Multiple witnesses also testified regarding the poor relations between defendant and Rackwise's most important customer and partner, Unisys, which was additional justification for defendant's removal.

Moreover, defendant did not disclose to the corporation or the Board his felony charges and a subsequent misdemeanor conviction based on a failure to file taxes. While most of the counts were dismissed, and defendant received only probation, defendant's charges and conviction nevertheless reflect negatively on a publicly traded corporation which seeks to do business with the federal government. These charges and

---

[4] Whether defendant's employment contract or any particular provision of the contract is or was valid, as well as the parties' rights or obligations with respect to that contract, remain issues for the jury to determine as part of plaintiff's damage claims.

7

conviction and failure to disclose also constituted just cause to terminate defendant.

Further, Rackwise was in great financial distress at the time of defendant's removal, with the IRS threatening to foreclose on the corporation. Rackwise was in default on its factoring agreement with Richert Funding, and the corporation facing the threat of eviction and termination of business services such as telephone and Internet. For all these reasons, the Rackwise shareholders had just cause to terminate defendant as CEO, President, and Chair of Rackwise.

### B. Appointment of Directors and February 2 and 3 Board Meetings

It is undisputed that RFII, though its Subscription Agreement, had a right to appoint two directors to the Rackwise Board. The court notes, though, that while RFII drafted a notice to Rackwise that it was exercising its right to appoint two directors, the notice did not identify the individuals whom it was appointing, and it is not clear the notice was delivered until the February 2, 2017 Board meeting. (See Ex. 18.) The minutes of the February 2, 2017 meeting do not discuss the appointment of directors. (See Ex. 15.) Rather, those minutes simply assume that Imeson and Richert were Board members, though the minutes for the February 3, 2017 meeting do discuss the appointment of Imeson and Richert. (Ex. 16.)

As to the February 2 and 3, 2017 Board meetings, the court notes that the Rackwise bylaws require that all directors be notified before a special Board meeting occurs. (Ex. 9 at § 4.4). It is undisputed that defendant, who was a director of

Rackwise, was not notified of the February 2 and 3 meetings beforehand.[5] Plaintiff claims that the lack of notice was justified by emergency circumstances and the fear that defendant would impede business at the meetings. However, plaintiff has not cited any authority which would allow a Board meeting to be called and conducted without proper notice to all the directors in the case of exigent circumstances, absent waiver, consent, or approval by the absent director. (See, e.g., Ex. 9 at § 4.6.)[6] Thus, the court will decline to grant plaintiff's request for a declaration of the court that the February 2, 2017 appointments of Imeson and Richert, the February 2 and 3, 2017 Board meetings, and the actions taken therein, were valid in and of themselves, assuming there was no later shareholder consent.

### C. Exercise of Warrants and Shareholder Consent

RFII and Triple R-F had valid warrants to purchase 1,448,400 shares of Rackwise stock at an exercise price of $.01 per share, and that Triple R-F had valid warrants to purchase 9,638,740 shares of Rackwise common stock at an exercise prices of $.01 per share. (See Exs. 5, 6.)

To exercise their warrants, RFII and Triple R-F were

---

[5] The court also notes that the evidence regarding Henderson's removal as director is somewhat ambiguous, with no evidence of any formal Board or corporate action, and it is undisputed that Henderson did not receive notice of the February 2 and 3 meetings beforehand.

[6] The court expresses no opinion as to whether the appointment of directors by RFII or defendant's removal complied with the Nevada Revised Statutes. While the parties identified this issue as one to be decided by the court, the submissions and presentations by the parties at trial were insufficient to allow the court to make any ruling.

9

required to (1) deliver to Rackwise an executed copy of the notice of exercise of warrants, (2) surrender the warrant to the Secretary of Rackwise at its principal office or any other office or agency as specified by Rackwise in writing, and (3) pay the applicable exercise price based on the number of shares multiplied by the exercise price. Here, RFII and Triple delivered notices of exercise of these warrants through Imeson and Dwight Richert, respectively, on March 22, 2017. (Exs. 25, 26.) While the notice of exercise and the warrants were in fact delivered to Imeson acting as chief restructuring officer for Rackwise, or to Rackwise's corporate counsel Michael Weiner, they were nonetheless delivered to Rackwise.

Defendant claims that notice of exercise and/or the warrants were required to be delivered to him personally as Secretary of Rackwise. However, there is no indication other than defendant's uncorroborated assertion that he was acting as Secretary of Rackwise in 2017. At any rate, the impetus behind the requirement of delivery of the warrants appears to be to ensure that the warrants were delivered to Rackwise, or the principal office where Rackwise's corporate officers normally are found. It cannot be the case that if Rackwise had no secretary, or that if there was a dispute over corporate governance, as there is here, that a holder of warrants would be prohibited from exercising valid warrants. Accordingly, the court finds that the delivery of RFII's and Triple R-F's notice of exercise and the warrants themselves to Imeson, acting as chief restructuring officer, or to Michael Weiner, acting as corporate counsel, substantially complied with the delivery of notice of exercise

and surrender of warrants requirements.

RFII's and Triple R-F also paid $14,484.00 and $96,387.40, respectively, into a Rackwise bank account, representing the purchase price of $.01 per share for the purchase of stock under the warrants, as testified by Imeson. The fact these funds were deposited into a new Rackwise bank account, rather than into an existing Rackwise bank account in California (controlled by defendant) does not render the payments defective. Indeed, Imeson testified that the funds paid to exercise RFII's and Triple R-F's payments were later used for Rackwise expenses. Overall, RFII's and Triple R-F's exercises of their warrants substantially complied with the warrants' requirements and were therefore valid.

D. Shareholder Consent

Under the Rackwise bylaws, stockholders holding at least 75% of the Rackwise common stock may remove directors by either a vote at a special meeting or by written consent:

> The holders of least seventy-five percent (75%) of the outstanding shares of stock entitled to vote may at any time peremptorily terminate the term of office of all or any of the directors by a vote at a meeting called for such purpose or by a written consent filed with the secretary or, in his absence, with any other officer. Such removal shall be effective immediately, even if successors are not elected simultaneously and the vacancies on the Board of Directors resulting therefrom shall be filled only by the stockholders.

(Ex. 9 § 3.3.) The Rackwise bylaws also allow the shareholders to "elect a director or directors at any time to fill any vacancy or vacancies not filled by the directors" and the owners of 50% of Rackwise stock to act by written consent in lieu of a meeting.

11

(Id. at § 3.3, § 2.10.)

Because RFII and Triple R-F validly exercised their warrants, they, along with Rackwise Funding, LLC, Black Diamond Financial Group, LLC, and Black Diamond Holdings, held at least 78.9% of Rackwise common stock. As holders of more than 75% of Rackwise common stock, these investors were entitled to act by consent to remove Archbold and Henderson as directors of the Rackwise Board, appoint Imeson and Bart Richert as directors, and ratify the actions taken at the March 2 and March 3, 2017 Board meetings, including the termination for cause of defendant as CEO and any other employment he held with Rackwise, and the appointment of Imeson as chief restructuring officer.[7] Accordingly, the court will grant in part plaintiff's request for declaratory and injunctive relief.

IT IS THEREFORE ORDERED that plaintiff's request for declaratory relief be, and the same hereby is, GRANTED in part, and the court hereby finds and declares as follows:

1. On March 22, 2017, Rackwise Funding II, LLC validly exercised its warrants and purchased 1,448,400 shares of Rackwise common stock.

2. On March 22, 2017, Triple R-F, LLC validly exercised its warrants and purchased 9,638,740 shares of Rackwise common stock.

3. On March 23, 2017, Rackwise shareholders Rackwise

---

[7] Because the shareholders were allowed to act by written consent under § 3.3 of the Rackwise bylaws, the court does not decide whether the March 23, 2017 telephone conference between Imeson and Dwight Richert, acting on behalf of RFII, Triple R-F, and other shareholders was sufficient to comply with the bylaws' requirements for special shareholder meetings.

Funding, LLC, Rackwise Funding II, LLC, Black Diamond Financial Group, LLC, Black Diamond Holdings, LLC, and Triple R-F, LLC, acting by written consent in accordance with § 3.3 of the Rackwise Bylaws, ratified and approved the removal of Guy Archbold and Sherman Henderson as directors of Rackwise effective February 3, 2017, and ratified and approved the appointment of Patrick Imeson and Bart Richert as directors of Rackwise effective February 3, 2017.

    4. On March 23, 2017, Rackwise shareholders Rackwise Funding, LLC, Rackwise Funding II, LLC, Black Diamond Financial Group, LLC, Black Diamond Holdings, LLC, and Triple R-F, LLC, acting by written consent in accordance with § 3.3 of the Rackwise Bylaws, ratified and approved the termination of Guy Archbold as an officer and employee of Rackwise effective February 3, 2017, and ratified and approved the appointment of Patrick Imeson as chief restructuring officer for Rackwise effective February 3, 2017.

    5. No later than March 23, 2017, Defendant Archbold ceased to have any legal authority to hold himself out as an officer, director, or employee of Rackwise, Inc., or to act on behalf of Rackwise, Inc.

    6. The Rackwise Board, in acting to terminate defendant Archbold as an officer, director, and employee of Rackwise effective February 3, 2017, and as ratified by the Rackwise shareholders, had just cause.

    IT IS FURTHER ORDERED that plaintiff's request for injunctive relief be, and the same hereby is, also GRANTED in part, and defendant Guy Archbold, his agents, and any party

13

acting in concert with him or his agents are enjoined from:

    1. accessing or logging into, or attempting to access or log into, Rackwise, Inc.'s account in the U.S. SEC's online EDGAR filing system;

    2. representing himself to anyone as being an officer, director, or employee of, or otherwise affiliated with Rackwise, Inc.; and

    3. acting, attempting to act, or purporting to act on behalf of Rackwise, Inc.

Plaintiff's remaining requests for declaratory and injunctive relief are DENIED.

This matter is set for status conference on September 24, 2018, at 1:30 p.m., to discuss the jury trial and related proceedings.

Dated: September 5, 2018

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE